**William Hunter, Plaintiff and Counterdefendant-Appellee, v. Thomas DeMay, Defendant-Counterplaintiff and Third-Party Plaintiff-Appellant, v. Paul F. Blackwell, Third-Party Defendant-Appellee.**

**Gen. No. 69–74.**

Second District.

May 28, 1970.

431

Gordon and Brustin, of Chicago, for appellant.

David G. Mountcastle, of Wheaton, and Hinshaw, Culbertson, Moelmann, Hoban and Fuller, of Chicago, for appellee.

MR. PRESIDING JUSTICE DAVIS delivered the opinion of the court.

This action for specific performance of a real estate sales contract was commenced by William Hunter, the buyer, against Thomas DeMay, the seller, to compel De May to convey approximately 11¼ acres of land to him. DeMay filed an answer and counterclaim against Hunter, which alleged that he had been fraudulently induced to sign the contract by Paul F. Blackwell, a real estate agent, who, DeMay alleged, was acting as agent for Hunter in the transaction. DeMay, in the capacity of a third-party plaintiff, also sued Blackwell and alleged that the contract provided that DeMay was to pay Blackwell a commission for the sale; that by virtue of said provision, Blackwell was DeMay's agent, and that, therefore, Blackwell should be required to indemnify DeMay for any monetary loss he would suffer were specific performance to be decreed.

Hunter filed a reply denying the affirmative allegations of the plaintiff's answer, and an answer to the counterclaim which denied the allegations therein made. Blackwell filed a counterclaim against DeMay for real

estate commissions, the allegations of which DeMay denied.

After hearing the cause, the trial court entered an order decreeing specific performance of the contract, granting judgment for Blackwell on his counterclaim, and further, granting judgment for Hunter and Blackwell on DeMay's counterclaim and third-party complaint, respectively. Subsequently, the will of Marie DeMay, the deceased wife of the defendant, was admitted to probate; and DeMay was enjoined from filing a renunciation of the will. DeMay appealed to this court, and asked that we reverse the order of the trial court and enter judgment in his favor on all issues.

In 1963, DeMay and his wife executed an exclusive sales contract for ninety days for the land which is the subject of this lawsuit. Blackwell was their agent under this agreement. The contract set forth the purchase price as $77,000. No sale was made and the agreement expired by its terms.

Marie DeMay died in 1965, and at that time she held the fee title to the real estate. She left a will which devised said real estate to her husband, Thomas DeMay; and the remainder of her estate to their seven children.

In August of 1967, Blackwell approached DeMay with an offer to purchase the property for $50,000. This offer contained no reference to the acreage of the property, but described it by metes and bounds. At that time De May had personally been trying to sell 8½ acres of this property and, according to his testimony, he had a "for sale" sign to this effect at the entrance of the property. DeMay indicated that he understood Blackwell's offer to be for 8½ acres. The offer was rejected in the form of a counteroffer which DeMay made by making certain changes on the face of the offer. The counteroffer was rejected by Hunter, who had made the original offer.

Blackwell presented another offer to purchase to De May, wherein the sale price was $65,000. According to Blackwell, the sale price was changed to $74,000, at De May's request. This price was accepted by Hunter. Blackwell was present when DeMay executed the agreement, which included a rider, wherein the property was legally described without any reference to its acreage. Blackwell testified that DeMay looked over the offer for forty-five minutes before signing it, although Blackwell could not testify that DeMay was then reading it. Later, Hunter signed the agreement.

DeMay, on the other hand, testified that he always intended and understood that the sale was to be for 8½ acres, and that he intended to retain the 2¾-acre tract of the property upon which his home was located. He further testified that he did not read the contract because he could not read, and that he signed only because he thought he was signing an offer for 8½ acres. There was a great deal of conflicting testimony in the record as to DeMay's ability or inability to read and to handle his own affairs. By his own testimony, however, it does appear that he could read, with some difficulty, and that he had managed his own affairs fairly well since his wife's death.

 Specific performance of a contract to convey real estate is not a matter of absolute right, but rests in the sound discretion of the trial court. But the court has no arbitrary discretion to deny relief. Miller v. Shea, 300 Ill 180, 184, 133 NE 183 (1921). The remedy may not be denied where it has been proved with a reasonable degree of certainty that there is a fair and valid contract and that the party seeking performance has offered to perform all the terms and conditions required of him. Greengard v. Bernstein, 343 Ill 416, 419, 175 NE 424 (1931). However, where a contract for the sale of real estate has been entered into without misunderstanding on the part of the vendee and without misrep-

resentation on the part of the vendor, specific performance will be granted as a matter of right and not as a matter of discretion. Hotze v. Schlanser, 410 Ill 265, 269, 270, 102 NE2d 131 (1951).

■■ The relief of specific performance will not be granted where a contract was entered into unfairly because of the circumstances of one or more of the parties, such as where unfair advantage has been taken of the ignorance, the confidence, the friendship, the inexperience or the mental deterioration of one of the parties to a contract. (Wrobel v. Wojtasiek, 341 Ill 330, 338, 339, 173 NE 348 (1930)) ; and where the relief would be inequitable or unconscionable, or where misrepresentations, unfairness, or superior advantage were responsible for the agreement, the relief will be denied, (Schiff v. Breitenbach, 14 Ill2d 611, 616, 153 NE2d 549 (1958)).

■ The evidence regarding DeMay's capacity to contract indicates that he was not an astute individual. It appears, however, that he was able to read, although with difficulty, and that on other occasions he had the presence of mind to ask for assistance in the handling of his business affairs. The evidence in this regard, and with reference to the circumstances surrounding the actual signing of the agreement, is conflicting. It seems rather obvious from the decision of the trial court, that it gave more credence to the evidence of the plaintiff. As to these issues, we may not disturb the findings of the trial court unless they are manifestly against the weight of the evidence. Brown v. Zimmerman, 18 Ill2d 94, 102, 163 NE2d 518 (1959) ; First Nat. Bank of Elgin v. Dierking, 87 Ill App2d 4, 13, 14, 230 NE2d 520 (1967). This is particularly true in close cases where the findings must have been dictated to a large extent by the impressions of credibility received by the trial court from the observation of witnesses.

■ DeMay contends that the trial court made evidentiary errors in excluding and in admitting certain evidence. The first allegation is that the trial court excluded relevant evidence of the dual agency of Blackwell for both the seller and buyer in this transaction. Our courts have long held that specific performance will not be granted in connection with a contract for the sale of real estate where the real estate broker acted on behalf of both the buyer and seller, without a full and complete disclosure of his dual agency. Wloczewski v. Kozlowski, 395 Ill 402, 406–408 incl., 70 NE2d 560 (1947); Fish v. Leser, 69 Ill 394, 400 (1873).

■ Upon a review of the entire record, however, we are satisfied that the trial court was fully advised on this issue. A number of questions propounded by counsel on this issue were of questionable relevancy. The trial court acted within its discretion in its evidentiary rulings on this matter when it permitted counsel to travel only so far afield and no further. At one point or another throughout the record of this proceeding, the relevant evidence on this issue was admitted by the court, and we find that such evidence was sufficient to sustain its findings.

■ Closely akin to the foregoing is the contention that the trial court did not permit evidence of DeMay's limited formal education. The trial court properly struck the testimony of DeMay's son with reference to the extent of his father's education when his testimony indicated that his answers were pure conjecture. DeMay, himself, was competent to testify to these facts and the court so advised counsel. However, counsel did not seek to elicit this information from DeMay when he was on the stand, and he may not now complain of this deficiency in the evidence.

The remaining areas of evidentiary complaint relate to the testimony of David C. Auble, a real estate broker,

concerning the value of the property in question; and the testimony of the secretary of the County Zoning Board— in rebuttal to evidence that there was a very high possibility of rezoning the property to multiple family use— as to the general policy of the Board with reference to granting multiple-family zoning.

■ With regard to the testimony of Auble, his opinion as to value was based upon a cursory examination of DeMay's property and on his knowledge of a comparable sale of property located about five miles from the property in question. The trial court is permitted wide discretion in its evidentiary rulings under such circumstances. Illinois Bldg. Authority v. Dembinsky, 101 Ill App2d 59, 63, 242 NE2d 67 (1968). Auble's testimony indicated that he was qualified to testify as an expert; it further suggests that the court probably gave no extraordinary weight to his conclusions. We find no reversible error in this respect. The complaints go to the weight and value of the testimony of this witness, not his competency. Kankakee Park Dist. v. Heidenreich, 328 Ill 198, 202, 159 NE 289 (1927).

■ The secretary of the zoning board did not testify as to the likelihood or probability of rezoning this particular property. His testimony was offered to rebut the testimony of one of DeMay's appraisers to the effect that there was a strong possibility of having the property rezoned for multiple housing. The testimony of the Zoning Board secretary was in reference to the factors considered by the Board in determining whether multiple-zoning classification might be granted to any property. It was proper, particularly in view of the fact that it was testimony in rebuttal of one of DeMay's witnesses. See: Lombard Park Dist. v. Chicago Title & Trust Co., 103 Ill App2d 1, 7–9 incl., 242 NE2d 440 (1968).

■ ■ In a case tried before the court without a jury, it will be presumed, unless the contrary is manifest,

that all incompetent evidence in the record before the court was rejected and all competent evidence was considered on the final hearing. If there is sufficient competent evidence in the record to sustain the findings and the judgment, it will then be affirmed. Oswald v. Nehls, 233 Ill 438, 444, 84 NE 619 (1908); Head v. Wood, 20 Ill App2d 97, 110, 155 NE2d 348 (1959). In the case at bar, an examination of the entire record is persuasive that the weight of the evidence is sufficient to sustain the decree of the trial court.

We also believe that the trial court was correct in its ruling that DeMay should be enjoined from renouncing his wife's will. DeMay had lived on the property for a considerable period of time, after his wife's death, in a manner consistent with an intent to accept the provisions of the will, and his conduct should be deemed an election to accept the terms of the will. Remillard v. Remillard, 6 Ill2d 567, 570, 571, 129 NE2d 744 (1955); Burns v. First Nat. Bank of Joliet, 304 Ill 292, 295, 296, 136 NE 695 (1922).

In the light of these pronouncements, the decree of the trial court is affirmed.

Decree affirmed.

MORAN and SEIDENFELD, JJ., concur.