76 N.J. Super. 409 (1962)
184 A.2d 755
THE STATE OF NEW JERSEY, ON COMPLAINT OF NEWTON A. MALLET, BUILDING INSPECTOR OF TOWNSHIP OF MIDDLETOWN, PLAINTIFF-RESPONDENT,
v.
ALBERT LOUX, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 9, 1962.
Decided October 16, 1962.
*410 Before Judges GOLDMANN, FREUND and FOLEY.
Mr. Chester Apy argued the cause for appellant (Messrs. Abramoff & Apy, attorneys).
Mr. Frederic Baar argued the cause for respondent.
PER CURIAM.
The Middletown Township Building Inspector filed a complaint in the local municipal court charging defendant with using certain described lands located in the R-15 residential zone of the township for a business purpose *411  specifically, for the storage of boats in connection with his boat works  in violation of the township zoning ordinance. The defense was that the use was nonconforming. The municipal magistrate found that such storage of boats as "perhaps" may have taken place prior to the ordinance was that of a trespasser. Since a trespasser could not establish a use as nonconforming, he found defendant guilty and imposed a fine of $100.
Defendant appealed the conviction to the County Court. The case was presented on the transcript of the municipal court hearing and argument. The county judge, after finding that the State had proved the violation beyond a reasonable doubt, found defendant guilty and imposed the same $100 penalty. Defendant appeals.
Defendant owns and operates a boatyard in what is known as the Leonardo section of Middletown Township. The stipulated facts show that defendant's business operation presently involves two tracts. The first is known as the Wagner tract, acquired by one William Wagner in December 1923 and on which he operated a boatyard until he sold it to defendant in March 1956, pursuant to a contract of sale executed October 26, 1953. The tract consists of land north of Burlington Avenue on Sandy Hook Bay, and two lots south of the avenue designated on the map in evidence as lots 53 and 54. As to the Wagner tract, the municipality agrees that a valid prior nonconforming use for a boatyard exists.
The second tract, known as the Banfield tract, had been owned by the Banfield family and used as a boat works during the 1920s and 1930s. After a fire in the 1930s the Banfields discontinued the boat works as well as their storage of boats. The township then acquired title by tax sale, and later sold the property to Martin and Ruth Fawcett on July 28, 1948. The Fawcetts, in turn, sold the property to defendant in November 1956. The Banfield tract consists of some 27 lots, including lots 46 through 52. The latter are the lands described in the complaint, and are located on the *412 south side of Burlington Avenue, between a creek which runs into Sandy Hook Bay and lots 53-54.
On April 1, 1961, the date charged in the complaint, defendant was using lots 46-52 for the storage of boats in connection with his boatyard on the Wagner tract. All of defendant's property is in the R-15 zone, having first been so zoned by an amendment to the local zoning ordinance adopted December 13, 1950. The operation of a boatyard, and the storage of boats, has been prohibited in an R-15 zone since that date.
Defendant's claim to a nonconforming use is based upon events which transpired during the Fawcett ownership. The critical period extends from the time the Fawcetts acquired title on July 28, 1948 and the adoption of the ordinance amendment zoning the area in question as residential on December 13, 1950. The testimony must therefore be considered within the limited time period of slightly over two years and four months.
Our considered review of the record leads us to conclude that a nonconforming use does not exist. The State established that lots 46-52 were not used for boat storage during the 28 months in question. Its witnesses testified from personal observations made over a long period of time and based on numerous year-round visits to the property.
We find defendant's proofs that boats had been stored on the lots during the time period in question far from persuasive. Defendant sought to establish that Wagner, who owned the tract across the street and lots 53-54 adjoining lots 46-52, had used the latter to store boats during the Fawcett ownership. The record discloses no right or interest in Wagner with regard to any of the Fawcett property, and lots 46-52 in particular. Wagner was neither the owner of those lots in 1948-50  the Fawcetts were  nor a lessee of the Fawcetts. Defendant testified that he knew of no arrangement between Wagner and the Fawcetts for the storage of boats; indeed, he himself had no arrangement with the Fawcetts after he took over Wagner's boatyard operation in *413 October 1953 under the contract of purchase and sale. The farthest defendant would go in his testimony was to say that the Fawcetts did not object to his use of their property for boat storage. This, of course, must have reference to the period after October 1953.
Whoever may have stored boats on lots 46-52 between July 28, 1948 and December 13, 1950 had a status rising no higher than that of a trespasser. This included Wagner, if perchance he did on occasion store boats on the lots in connection with his boatyard across the street.
The testimony adduced by defendant as to the use of the lots was imprecise and nebulous. There is no convincing proof as to exactly on which of these lots boats may have been placed, when they were stored, and by whom they were put there. If boats were stored, the users were at best trespassers, the use intermittent, and the time of such use indefinite. A nonconforming use may not be erected on so insubstantial a foundation.
We conclude that any use that may have been made of lots 46-52 during 1948-1950 was not lawful in its inception  let alone actively and constantly maintained. R.S. 40:55-48 does not lend protection to such a use, founded as it is on trespass. Struyk v. Samuel Braen's Sons, 17 N.J. Super. 1 (App. Div. 1951), affirmed on opinion 9 N.J. 294 (1952), on which defendant relies, is distinguishable. The court there found, as established in the record under review, that the owner had permitted plaintiff to use the property involved for some 25 years prior to the passage of the prohibitive ordinance. But more fundamentally, the specific question considered in Struyk was whether a use, assumed to be legal as a valid nonconforming use, could be enlarged and expanded. The court did not deal with the question basic to our case: whether the use asserted was legal at its inception.
Defendant does not argue the burden of proof in a zoning ordinance violation case, but seems to assume that the rules applicable to appellate review of a non-jury civil case, *414 such as Greenfield v. Dusseault, 60 N.J. Super. 436 (App. Div. 1960), affirmed on opinion, 33 N.J. 78 (1960), apply here. Upon this premise he claims that the judgment of conviction was "contrary to the weight of evidence and clear error," and asks this court to make new findings of fact. The rule, set out in Greenfield, is firmly established that the findings of a trial judge in a non-jury case should not be disturbed unless they are so wholly unsupportable as to result in a denial of justice. An appellate court should exercise its fact-finding jurisdiction sparingly, and in none but a clear case, where there is no doubt about the matter.
But that aside and viewing the charge, as we must, as criminal in nature, we find that the State carried its burden of proving beyond a reasonable doubt that there was a zoning violation. Wagner's alleged use of the lots was not even that of a licensee, as defendant claims, but of a trespasser, and any appropriation of the land by him amounted to an unlawful use. To give nonconforming-use vitality to a disfavored use by a trespasser would serve neither the specific object of the Zoning Act provision relating to nonconforming uses, R.S. 40:55-48, nor the more general purpose of eliminating uses not in conformity with the municipal zoning scheme.
Affirmed.